1  RUTAN & TUCKER, LLP
   Duke F. Wahlquist (State Bar No. 117722)
2  Gerard M. Mooney (State Bar No. 222137)
   611 Anton Boulevard, Fourteenth Floor
3  Costa Mesa, California 92626-1931
   Telephone: 714-641-5100
4  Facsimile: 714-546-9035
   dwahlquist@rutan.com
5  gmooney@rutan.com

6  Attorneys for Plaintiff
   EASTWOOD INSURANCE SERVICES, INC.
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | EASTWOOD INSURANCE            | Case No. 8:08-cv-00553-AG-AN
   | SERVICES, INC.,               |
12 |                               | **MEMORANDUM OF POINTS AND**
   |          Plaintiff,           | **AUTHORITIES IN SUPPORT OF**
13 |                               | **PLAINTIFF EASTWOOD**
   |     vs.                       | **INSURANCE SERVICES, INC.'S**
14 |                               | **MOTION FOR PARTIAL**
   | U.S. SPECIALTY INSURANCE      | **SUMMARY JUDGMENT**
15 | COMPANY, and DOES 1 through 10,|
   | inclusive,                    |
16 |                               | **[Notice Of Motion, Declarations Of**
   |          Defendants.          | **Duke Wahlquist, Mark Payne And La**
17 |                               | **Shauna Hale-Johnson, Statement Of**
   |                               | **Uncontroverted Facts And**
18 |                               | **Conclusions Of Law, And Proposed**
   |                               | **Judgment Filed Concurrently**
19 |                               | **Herewith]**

20

21                                  Date:  October 20, 2008 [Per Order]
                                    Time:  10:00 a.m.
22                                  Place: Courtroom 10D
                                    Judge: Hon. Andrew J. Guilford
23

24                                  Date Removed: May 16, 2008
                                    Trial Date:   Not Set
25 ///

26 ///

27 ///

28 ///

Rutan & Tucker, LLP
attorneys at law
2152/015922-0029                          PLAINTIFF'S MOTION FOR PARTIAL
931413.04 a09/02/08                       SUMMARY JUDGMENT

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3  I.    INTRODUCTION...................................................................................... 1

4  II.   FACTUAL HISTORY. ............................................................................. 1

5       A.    The Allegations Underlying Ms. Ayala's Claims................................ 1

6       B.    Formation Of USSIC's Policy Of Insurance. ........................... 5

7       C.    Eastwood Notifies USSIC Of Ms. Ayala's Claims, And
              USSIC Denies Coverage................................................................ 6
8
        D.    The Provisions Of USSIC's Policy.............................................. 10
9
10 III.  USSIC IS OBLIGATED TO DEFEND EASTWOOD. ........................ 13

        A.    Summary Judgment Standards.............................................. 13
11
        B.    California Law Applies To This Action And USSIC's
12            Policy. ..................................................................................... 14

13      C.    Interpretation Of An Insurance Policy And The Existence
              Of A Duty To Defend Are Questions Of Law For The
14            Court......................................................................................... 14

15      D.    The Duty To Defend Is Broad And Requires A Defense Of
              Any Claim Which Potentially Seeks Covered Damages.................. 14
16
        E.    Ms. Ayala's Claims For Damages Fall Within The Policy. ............... 15
17
        F.    USSIC's Factual Disputes Do Not Negate A Duty To
18            Defend. .................................................................................... 17

19      G.    Eastwood's Truthful Responses To The Application For
              USSIC's Policy Cannot Eliminate A Duty To Defend...................... 22
20
   IV.  CONCLUSION. ...................................................................................... 25
21

22

23

24

25

26

27

28

Rutan & Tucker LLP
attorneys at law

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................................... 13

*Continental Ins. Co. v. MGM,*
    107 F.3d 1344 (9th Cir. 1997).......................................................................... 14

*Informix Corp. v. Lloyd's of London,*
    1992 U.S. Dist. LEXIS 16836 (N.D. Cal., Oct. 15, 1992).............. 19, 20, 21, 22

*Robi v. Five Platters, Inc.,*
    918 F.2d 1439 (9th Cir. 1990)......................................................................... 13

**STATE CASES**

*Aydin Corp. v. First State Ins. Co.,*
    18 Cal.4th 1183 (1998)................................................................................... 15

*Buss v. Superior Court,*
    16 Cal.4th 35 (1997)....................................................................................... 14

*California Comp. & Fire Co. v. Industrial Acc. Comm'n,*
    62 Cal.2d 532 (1965)...................................................................................... 24

*Gray v. Zurich Ins. Co.,*
    65 Cal.2d 263 (1966)...................................................................................... 14

*Haynes v. Farmers Ins. Exch.,*
    32 Cal.4th 1198 (2004)................................................................................... 24

*Homestead Insurance Co. v. American Empire Surplus Lines Ins. Co.,*
    44 Cal.App.4th 1297 (1996)........................................................................... 21

*Horace Mann Ins. Co. v. Barbara B.,*
    4 Cal.4th 1076 (1993)................................................................... 1, 14, 15, 17, 20

*Jauregui v. Mid-Century Ins. Co.,*
    1 Cal.App.4th 1544 (1991)............................................................................. 24

Rutan & Tucker LLP
attorneys at law

**Page(s)**

*Montrose Chem. Corp. v. Superior Court,*
    6 Cal.4th 287 (1993)................................................................... 14, 17, 18, 20

*Mirpad, LLC v. Cal. Ins. Guar. Ass'n,*
    132 Cal.App.4th 1058 (2005)..................................................... 15, 17, 18, 20

*Ponder v. Blue Cross of S. Cal.,*
    145 Cal.App.3d 709 (1983)............................................................................ 24

*Travelers Casualty & Surety Co. v. Transcontinental Ins. Co.,*
    122 Cal.App.4th 949 (2004)........................................................................... 23

*University of Judaism v. Transamerica Ins. Co.,*
    61 Cal.App.3d 937 (1976)............................................................................... 24

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal.4th 1 (1995)................................................................................... 14, 15

*Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.,*
    68 Cal.App.4th 1030 (1998)........................................................................... 19


**FEDERAL STATUTES**

Federal Rules of Civil Procedure
    56(a)............................................................................................................... 13
    56(c)............................................................................................................... 13

**STATE STATUTES**

California Government Code,
    § 12900 ............................................................................................................ 2


**OTHER AUTHORITIES**

Croskey, et al., CAL. PRAC. GUIDE: CAL. INS. LIT.
    (The Rutter Group rev. ed. 2007) Third Party Coverages:  Duty to Defend,
    § 4:495 ............................................................................................................ 24
    § 7:572 .............................................................................................................. 1

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

-iii-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   **I.**     **INTRODUCTION.**

2      Plaintiff Eastwood Insurance Services, Inc. ("Eastwood") seeks partial

3 summary judgment against defendant U.S. Specialty Insurance Company ("USSIC")

4 establishing USSIC's duty to defend Eastwood against claims asserted by Elizabeth

5 Ayala, a former employee of Eastwood.  Alternatively, Eastwood seeks an order

6 requiring USSIC to reimburse Eastwood for its fees and costs incurred in defending

7 itself against Ms. Ayala's claims.

8      Ms. Ayala states claims against Eastwood for, *inter alia*, wrongful

9 termination and violation of the Family and Medical Leave Act ("FMLA") and

10 corresponding California law.  USSIC's policy issued to Eastwood specifically

11 covers claims of "Employment Practices Wrongful Act[s]," which is defined by the

12 policy to include, *inter alia*, "wrongful termination," and "violation[s] of the Family

13 and Medical Leave Act."  (Wahlquist Decl., Ex. 1.)  Despite the clear terms of the

14 policy, USSIC contends it has no duty to defend Eastwood.

15   **II.**     **FACTUAL HISTORY.**

16      Whether an insurer owes its insured a duty to defend depends on "the terms of

17 the policy, the allegations of the third party's complaint against the insured, [and] all

18 facts known to the insurer from any source."  Croskey, et al., CAL. PRAC. GUIDE:

19 CAL. INS. LIT. (The Rutter Group rev. ed. 2007) Third Party Coverages:  Duty to

20 Defend, § 7:572; *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076,

21 1081 (1993).  Accordingly, Eastwood begins with a summary of Ms. Ayala's

22 claims, the facts communicated to USSIC, and USSIC's denial of coverage.

23 Eastwood then discusses the terms of USSIC's policy.  Finally, Eastwood explains

24 how the policy language mandates that USSIC provide a defense to Eastwood.

25      **A.**     **The Allegations Underlying Ms. Ayala's Claims.**

26      In October 2002, Ms. Ayala became employed by Eastwood as a sales agent.

27 (Hale-Johnson Decl., Ex. 13 at 5.)  Ms. Ayala and Eastwood entered into an

28 "Alternative Dispute Resolution (Arbitration) Agreement" (the "Arbitration

Rutan & Tucker LLP
attorneys at law

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Agreement") which provided for arbitration of claims by Ms. Ayala having any relationship or connection to her employment by Eastwood. (Payne Decl., Ex. 15.)

Between approximately December 2002 and late October or early November 2003, Ms. Ayala had a sexual relationship with Mr. Steve Chavez ("Mr. Chavez"), the manager of Ms. Ayala's office. (Hale-Johnson Decl., Ex. 13 at 6.)

On the afternoon of December 9, 2003, Ms. Ayala reported a claim of sexual harassment by Mr. Chavez to Eastwood's human resources department. (*Id.* at 11.) Eastwood immediately began an investigation of Ms. Ayala's claim, which ultimately did not substantiate Ms. Ayala's complaint. On December 22, 2003, Eastwood terminated Mr. Chavez's employment for dishonesty and conduct unbecoming management. (*Id.* at 12.) Ms. Ayala remained employed by Eastwood.

On August 4, 2004, Ms. Ayala filed a Complaint of Discrimination (the "First DFEH Complaint") with the California Department of Fair Employment and Housing ("DFEH"). (Wahlquist Decl., Ex. 5.) Ms. Ayala's First DFEH Complaint alleged that Mr. Chavez sexually harassed Ms. Ayala; that after her report, Ms. Ayala was subject to "retaliation"; and that Eastwood knew or should have known of and ratified the harassment and did not conduct a proper investigation. (*Id.*)

No part of Ms. Ayala's First DFEH Complaint suggested that Eastwood violated the FMLA or wrongfully terminated Ms. Ayala's employment. (*Id.*) Indeed, Ms. Ayala remained employed by Eastwood at the time. (*Id.*)

On October 7, 2004, Ms. Ayala filed an action against Eastwood and Mr. Chavez with the Los Angeles County Superior Court entitled *Elizabeth Ayala v. Eastwood Ins. Services*, Case No. BC322639 (the "LASC Litigation"). (Hale-Johnson Decl., Ex. 8.) That complaint alleged claims for Violation of California's Fair Employment and Housing Act, California Gov. Code, § 12900 *et seq.*; Sexual Battery; Battery; and Intentional Infliction of Emotional Distress.

Just as with Ms. Ayala's First DFEH Complaint, Ms. Ayala's complaint in the LASC Litigation did not suggest that Eastwood violated the FMLA or wrongfully

Katten & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

-2-

1 │ terminated Ms. Ayala's employment.  (*Id.*)  In fact, Ms. Ayala <u>remained employed</u>
2 │ <u>by Eastwood</u>.

3 │        On December 15, 2004, the Court entered an order compelling Ms. Ayala to
4 │ arbitrate the claims in the LASC Litigation (the "Arbitration").  (*Id.*, Ex. 9.)  Ms.
5 │ Ayala <u>remained employed by Eastwood</u>.

6 │        On September 1, 2005, Ms. Ayala executed a second Complaint of
7 │ Discrimination (the "Second DFEH Complaint"), which Ms. Ayala filed with the
8 │ California DFEH on September 2, 2005.  (Wahlquist Decl., Ex. 6.)  Ms. Ayala's
9 │ Second DFEH Complaint alleged, in relevant part:

10 │        While employed at Eastwood Ins., Complainant was subjected to
   │        sexual harassment by Steve Chavez, her supervisor.  After
11 │        Complainant reported the harassment, she was subjected to retaliation
   │        by her employer.  After Complainant filed a complaint with the DFEH
12 │        Eastwood Insurance and its management continued to retaliate against
   │        Complainant and wrongfully denied her requests for family and
13 │        medical leave.

14 │ (*Id.*)  This was Ms. Ayala's <u>first allegation</u> concerning "family and medical leave."
15 │ (*Id.*)  Nevertheless, Ms. Ayala <u>remained employed by Eastwood</u>.

16 │        On December 13, 2005, after Ms. Ayala had taken an extended leave of
17 │ absence without providing medical documentation, Eastwood terminated Ms.
18 │ Ayala's employment for unexcused absences.  (Payne Decl., ¶ 13.)  On July 11,
19 │ 2006 – nearly seven months later – Ms. Ayala apparently signed – but did not then
20 │ file – a third Complaint of Discrimination with the California DFEH (the "Third
21 │ DFEH Complaint").  (Wahlquist Decl., Ex. 7.)  Ms. Ayala's Third DFEH Complaint
22 │ generally alleged that "on 10/2002 to 12/13/2005" Ms. Ayala was "fired," "denied
23 │ family or medical leave" and was the victim of "discrimination" because of her
24 │ "Taking Family Medical Leave."  (*Id.*)  The allegations of the Third DFEH
25 │ Complaint were tied to events purportedly occurring on November 1, November 20,
26 │ December 7, December 13, and December 26, <u>2005</u>.  (*Id.*)

27 │        On July 11, 2006, Ms. Ayala sought leave to file a first amended complaint in
28 │ the Arbitration.  (Hale-Johnson Decl., Ex. 10.)  Ms. Ayala's motion to amend

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
-3-

1  represented to the arbitrator that "[t]he First Amended Complaint adds <u>new</u>
2  <u>allegations</u> that Eastwood fired Plaintiff in retaliation for bringing her sexual
3  harassment cause of action and that the firing was unlawful under both the CFRA
4  <u>and the FMLA</u>." (*Id.* [emphasis added].) "These causes of action," Ms. Ayala
5  asserted, "<u>arose in December of 2005</u>." (*Id.* at 4:13-16 [emphasis added].)

6      On July 18, 2006, Ms. Ayala filed her Third DFEH Complaint. (Wahlquist
7  Decl., Ex. 7.)  The DFEH issued Ms. Ayala a Right-To-Sue-Letter on July 27, 2006.
8  Ms. Ayala did not serve a copy of the Third DFEH Complaint nor did Eastwood
9  learn of it until September 2006. (Payne Decl., ¶ 10.)

10     Meanwhile, on July 19, 2006, the arbitrator, Enrique Romero, denied Ms.
11  Ayala's motion to amend. (Hale-Johnson Decl., Ex. 11.)  However, on August 7,
12  2006, Arbitrator Romero expressed an intention to resolve Ms. Ayala's allegations
13  of wrongful termination and violation of the FMLA in the Arbitration. (Hale-
14  Johnson Decl., ¶ 7.)  On the first day of hearings, Arbitrator Romero ruled that those
15  allegations would be heard in the Arbitration. (*Id.*, ¶ 8.)

16     On September 15, 2006, Ms. Ayala filed a separate action in the Riverside
17  County Superior Court, *Ayala v. Eastwood Insurance Services, Inc.*, Case No.
18  RIC457135 (the "Riverside Litigation"), alleging the same causes of action as in the
19  first amended complaint she had attempted to file in the Arbitration. (Payne Decl.,
20  Ex. 16.)  Ms. Ayala generally alleged that on or about December 13, 2005,
21  Eastwood terminated Ms. Ayala's employment in violation of the FMLA, CFRA
22  and California's Fair Employment and Housing Act. (*Id.*)

23     Hearings in the Arbitration took place in August 2006, October 2006 and
24  February 2007. (Hale-Johnson Decl., ¶ 9.)  Arbitrator Romero permitted evidence
25  and argument pertaining to Ms. Ayala's assertions that Eastwood wrongfully
26  terminated her employment in violation of the FMLA in December 2005. (*Id.*)

27     On May 21, 2007, Arbitrator Romero issued an award captioned "INTERIM
28  BINDING ARBITRATION AWARD" which awarded Ms. Ayala $300,753.00 in

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
-4-

1  damages, comprised of (1) $190,753.00 in lost earnings as a result of Eastwood's

2  termination of Ms. Ayala's employment in December 2005, (2) $10,000 for

3  emotional distress arising out of harassment by Mr. Chavez and (3) $100,000 for

4  emotional distress arising out of "harassment/retaliation post Chavez." (*Id.*, Ex. 13.)

5  On October 17, 2007, Arbitrator Romero issued a FINAL BINDING

6  ARBITRATION AWARD, awarding Ms. Ayala an additional $1,372,360.80 in

7  attorneys' fees and $34,499.21 in costs. (*Id.*, Ex. 14.)

8      On October 26, 2007, Eastwood answered the complaint in the Riverside

9  Litigation, which Ms. Ayala had served on March 7, 2007. (Payne Decl., ¶ 5.) The

10 Riverside Litigation remains pending. (*Id.*)

11     The award in the Arbitration between Ms. Ayala and Eastwood is not yet

12 final. Ms. Ayala's Arbitration Agreement provided for an appeal of the award. (*Id.*,

13 ¶ 6.) Eastwood gave notice of its appeal November 7, 2007, and filed its opening

14 brief on July 30, 2008. (*Id.*, Exs. 17, 18.) The appeal remains pending. (*Id.*, ¶ 6.)

15     **B.   Formation Of USSIC's Policy Of Insurance.**

16     On July 21, 2005, Eastwood executed an application for Directors and

17 Officers Liability insurance (the "Application"). (Wahlquist Decl., Ex. 3.) Question

18 13(e) of the Application requested a "[s]ummary and status of any litigation filed

19 within the last 24 months against any person or entity proposed for this insurance

20 (including any litigation that has been resolved)." (*Id.*) Complying with that

21 request, Eastwood responded:

22     Status of Litigation: Elizabeth Ayala – current employee filed sexual
        harassment complaint in 12/03 [a reference to the Human Resources
23     Complaint which was the precursor to Ms. Ayala's First DFEH
        Complaint and the LASC Litigation]. Case ordered [a reference to the
24     Los Angeles County Superior Court's order of December 15, 2004] to
        mandatory arbitration. Discovery in early stages. (*Id.*)
25

26     Eastwood received no request from USSIC for additional information in

27 response to this disclosure. (*See* Amended Answer at ¶ 14.) What is more, the

28 LASC Litigation was a matter of public record readily available to USSIC. (*Id.*)

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                              -5-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   Questions 12(a) and 12(b) of the Application read as follows:

2   (a)  Have any claims been made during the last 5 years against any
3   person or entity proposed for this insurance in his or her capacity as a
    director, officer or trustee of any corporation or organization?  If yes,
4   please provide complete details (use a separate sheet of paper, if
    necessary).

5    (b)  Is any person or entity proposed for this insurance aware of any
6   fact, circumstance or situation involving the Applicant or any Insured
    Person or Organization which he, she or it has reason to believe might
7   result in a claim being made?  If yes, please provide complete details
    (use a separate sheet of paper, if necessary).

8   (*Id.*, Ex. 3.)

9       Eastwood answered "no" and "yes" to questions 12(a) and 12(b),

10  respectively.  (*Id.*)  In further response to question 12(b), Eastwood identified two

11  former employees, but did not reference Ms. Ayala.  (*Id.*)  Eastwood did not further

12  identify the LASC Litigation or the Arbitration in response to Questions 12(a) and

13  12(b) because such information was not responsive to those questions.

14      On August 5, 2005, USSIC issued Directors, Officers and Organization

15  Liability Insurance Policy No. 14-MGU-05-A10727 (the "Policy") for the period

16  July 22, 2005 to July 22, 2006.  (Wahlquist Decl., Ex. 1; Amended Answer, ¶ 17.)

17      **C.    Eastwood Notifies USSIC Of Ms. Ayala's Claims, And USSIC**

18          **Denies Coverage.**

19      On July 28, 2006, Eastwood's counsel advised USSIC's counsel – Elita M.

20  Lilly – in writing of the claim asserted by Ms. Ayala that same day, which was a

21  claim for the alleged acts of wrongful termination and violation of the FMLA made

22  in Ms. Ayala's Second DFEH Complaint, Third DFEH Complaint, and motion for

23  leave to file an amended complaint in the Arbitration.  (Payne Decl., Ex. 19.)

24      In early August 2006 and again on August 17, 2006, Eastwood

25  communicated to its insurance broker, Armstrong/Robitaille, that Arbitrator Romero

26  had allowed Ms. Ayala to introduce into the Arbitration the issue of Eastwood's

27  alleged "wrongful termination" of Ms. Ayala in December 2005 and Eastwood's

28  alleged violations of the FMLA.  (*Id.*, ¶ 7.)  Eastwood requested that

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                          -6-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   Armstrong/Robitaille communicate this information to USSIC for the purpose of
2   securing benefits under the Policy. (*Id.*, ¶ 8.)

3       On August 22, 2006, USSIC's counsel, Ms. Lilly, acknowledged receipt of
4   the information provided by Eastwood to Armstrong/Robitaille in a written e-mail to
5   Eastwood's in-house counsel, John Trieu. (Payne Decl., Ex. 20.) Ms. Lilly
6   requested additional information which Eastwood supplied. (Payne Decl., ¶¶ 8-9.)

7       On September 25, 2006, Eastwood first received a copy and learned of Ms.
8   Ayala's July 18, 2006 Third DFEH Complaint. (*Id.*, ¶ 10.) Eastwood immediately
9   communicated the Third DFEH Complaint to USSIC. (*Id.*; Ex. 23.)

10      On October 2, 2006, Ms. Lilly advised Eastwood that the law firm of Drinker
11  Biddle & Reath, LLP ("DBR") would respond to Eastwood's request for benefits
12  under the Policy. (Payne Decl., ¶ 11.) On October 5, 2006, Dina M. Gold, Esq., of
13  DBR communicated with counsel for Eastwood requesting additional information.
14  (*Id.*, Ex. 24.) Eastwood supplied the requested information. (*Id.*, ¶¶ 11-12.)

15      On October 6, 2006, Ms. Gold, acting on behalf of USSIC, denied
16  Eastwood's request for Policy benefits in connection with Ms. Ayala's claims.
17  (Wahlquist Decl., Ex. 4.) Ms. Gold wrote that Ms. Ayala's First DFEH Complaint
18  and the LASC Litigation were filed "prior to the inception of the Policy." (*Id.* at 3.)
19  Ms. Gold cited Ms. Ayala's allegation in the LASC Litigation that "[a]fter Chavez
20  ended his employment with [Eastwood], *the Defendants continued to retaliate*
21  *against the Plaintiff*, including, but not limited to, disciplining her without proper
22  justification, harassing her when she took off hours to get medical care for her son,
23  *improperly charging her with absences when she took medical leave*, and changing
24  rules and procedures in manner [sic] targeted to reduce [Ms. Ayala's]
25  commissions." (*Id.* [emphasis in original].) Eastwood disputed this allegation.

26      Ms. Gold wrote that in the Second DFEH Complaint, Ms. Ayala alleged that
27  "*she was subjected to retaliation by her employer*" and that Eastwood "*continued to*
28  *retaliate against [Ms. Ayala] and wrongfully denied her requests for family and*

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                    -7-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   *medical leave*." (*Id.* [emphasis in original].)  Eastwood disputed this allegation.
2   Ms. Gold noted that these allegations "are included in the Arbitration." (*Id.*)

3        Ms. Gold wrote that in Ms. Ayala's proposed first amended complaint in the
4   Arbitration, Ms. Ayala alleged that "*Eastwood fired [her] in retaliation for bringing*
5   *her sexual harassment cause of action*" and that the firing "was unlawful under both
6   the CFRA and the FMLA." (*Id.* [emphasis in original].)  Eastwood disputed this
7   allegation. Ms. Gold wrote that "[i]t is also clear from repeated references in the
8   record that the medical condition that led Ayala to seek FMLA leave (depression)
9   arose from the alleged wrongful and retaliatory treatment of Ayala that forms the
10  basis for the prior complaints," an assertion not even made in Ms. Ayala's
11  complaints. (*Id.*)  Ms. Gold noted that Arbitrator Romero intended to adjudicate
12  Ms. Ayala's new claims in the Arbitration. (*Id.* at 3-4.)

13       Ms. Gold wrote that the First DFEH Claim and the Complaint in the LASC
14  Litigation were both "Claims" pursuant to the Policy. (*Id.* at 4.)  Ms. Gold wrote
15  that Eastwood somehow "acknowledges that the Second DFEH Complaint, <u>while</u>
16  <u>filed during the Policy Period</u>, does not constitute a Claim considered to have been
17  first made during the Policy Period . . . ."[1] (*Id.* [emphasis added].)

18       Ms. Gold wrote that Ms. Ayala's allegations in the Second DFEH Claim and
19  the FMLA and CFRA claims Ms. Ayala sought to add to the Arbitration were not
20  "first made" during the Policy Period because "Condition (C)" of the Policy
21  "operates to combine all the various Claims into a single Claim considered to have
22  been first made as of the filing of the First DFEH Complaint on August 4, 2004."
23  (*Id.*)  Ms. Gold wrote that "USSIC does not believe that additional allegations raised
24  in a pending proceeding, or even amendments to the initial proceeding, constitute a
25  distinct Claim under the Policy." (*Id.*)  Rather, Ms. Gold wrote, "these additional
26  allegations are part of the same Claim that was made prior to the inception of the
27  Policy," and thus there is no coverage under the Policy. (*Id.*)

28  _____
[1]  This statement of Eastwood's position is false.

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
-8-

1    Ms. Gold wrote that "[e]ven if Ayala's additional allegations somehow
2 constituted a separate Claim under the Policy, they are not eligible for coverage"
3 pursuant to Condition (C) because her allegations of "retaliation" purportedly appear
4 in each of her DFEH claims and the Complaint in the LASC Litigation. (*Id.*) Ms.
5 Gold wrote that "[b]ecause these allegations, including [Ms. Ayala's] recent
6 allegation of retaliatory discharge, constitute 'a series of related facts,
7 circumstances, situations, transactions or events,' the various filings would under
8 any circumstances be considered a single Claim pursuant to Condition (C) of the
9 Policy" first made before inception of the Policy. (*Id.* at 5-6.)

10    Ms. Gold also quoted Exclusion (I) of the Policy, in part, as follows:

11    [T]he Insurer will not be liable to make any payment of Loss in
        connection with a Claim . . . arising out of, based upon or attributable
12    to any pending or prior litigation as of the inception date of the Policy,
        or alleging or derived from the same or essentially the same facts or
13    circumstances as alleged in such pending or prior litigation.

14 (*Id.* at 6.) Because Ms. Ayala's new allegations regarding the FMLA and CFRA
15 purportedly "arise out of, are based upon or attributable to the initially filed
16 Complaint," Ms. Gold wrote, "Exclusion (I) would preclude coverage." (*Id.*)

17    Finally, Ms. Gold noted language following Question 12 on the Application:

18    Without prejudice to any other rights of the Insurer, it is understood
        and agreed that the Insurer will not be liable under any policy that may
19    be issued on the basis of this Application to make any payment of
        Loss, including Defense Costs, in connection with any Claim, arising
20    out of, based upon or attributable to any claim, fact, circumstance or
        situation disclosed or required to be disclosed in response to questions
21    12(a) and 12(b).

22 (*Id.*) Ms. Gold wrote that although Eastwood had disclosed in response to Question
23 13(e) "the filing of a complaint by Ayala in December 2003," Eastwood did not
24 disclose the same in response to Question 12, eliminating coverage. (*Id.* at 7.)

25    Eastwood's counsel, Mr. Payne, e-mailed a copy of Ms. Ayala's complaint in
26 the Riverside Litigation to Ms. Gold and Douglas Mangel, Esq. of DBR, and to Ms.
27 Lilly, on October 9, 2006. (Payne Decl., Ex. 23.) Mr. Payne's e-mail stated that
28 Eastwood was "tendering the new complaint" which "came to our attention as a

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                -9-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   recent filing, but Eastwood has not been served with the complaint." (*Id.*)

2      Responding to Mr. Payne's e-mail of October 9, 2006, Ms. Gold wrote:

3      [T]hank you for forwarding this. Can you explain what this filing is?
       It seems to contradict the parties' understanding as expressed by the
4      Arbitrator on the opening day of the arbitration[.]

5   (*Id.*)  Ms. Gold's e-mail expressed USSIC's understanding that the complaint in the

6   Riverside Litigation raised claims not previously at issue in the Arbitration.

7   However, USSIC has never responded to Eastwood's tender of Ms. Ayala's

8   complaint in the Riverside Litigation.

9      **D.      The Provisions Of USSIC's Policy.**

10     The Policy's INSURING AGREEMENTS (B) provides, in relevant part:

11     The insurer will pay to or on behalf of the **Insured Organization Loss**
       arising from **Claims** first made against it during the **Policy Period** or
12     **Discovery Period** (if applicable) for **Wrongful Acts**.

13  (Wahlquist Decl., Exs. 1, 2.)[2]  Relevant to this provision, the Policy's

14  DEFINITIONS, as amended by the various Endorsements, provide:

15     (B)    **Claim** means:

16          (1)   any oral or written demand, including any demand for
                  non-monetary relief,
17
            (2)   any civil proceeding commenced by service of a
18                complaint or similar pleading,

19          (3)   any arbitration, mediation or other similar dispute
                  resolution proceeding,
20
            (4)   any administrative or regulatory proceeding commenced
21                by the filing of a notice of charges, formal investigative
                  order or similar document,
22
            (5)   any criminal proceeding commenced by the return of an
23                indictment, or

24          (6)   any appeal from any proceeding referred to in this
                  DEFINITION (B).
25
       (C)    **Defense Costs** means reasonable legal fees, costs  and expenses
26            consented to by the Insurer (including premiums for any appeal
              bond, attachment bond or similar bond) resulting from the
27

28  [2]   This brief, where appropriate, follows the convention of the Policy placing
        defined terms in bold print.

Rutan & Tucker LLP
attorneys at law
2152/015922-0029
931413.04 a09/02/08

investigation, adjustment, defense or appeal of a **Claim** against an **Insured**, but excluding salaries, wages, benefits or overhead expenses of any **Insured Person**.

    (D)   **Discrimination** means:

        (1)   any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

        (2)   any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an **Employee**; because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

The Policy further provides:

        (1)   The term "**Third Party**" means any person(s) with whom an **Insured** interacts.

        (2)   The term "**Third Party Discrimination**" means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, religion, age, sex, national origin, disability, pregnancy, sexual orientation or preference, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

    (E)   **Employee** means any individual whom the **Insured Organization** compensates by salary, wages and/or commissions and whose labor or service is engaged by and directed by the **Insured Organization**, including seasonal, volunteer and part-time employees.

    (F)   **Employment Practices Wrongful Act** means any actual or alleged:

        (1)   **Discrimination**,

        (2)   **Retaliation**,

        (3)   **Sexual Harassment**,
        (4)   **Workplace Harassment**,

        (5)   **Workplace Tort**,

        (6)   **Wrongful Termination**, or

        (7)   Violation of the Family and Medical Leave Act.

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

-11-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

(G)  **Insured** means the **Insured Persons** and the **Insured Organization**.

(H)  **Insured Organization** means the **Named Organization** and any **Subsidiary** thereof.

(J)  **Loss** means **Defense Costs** and any damages, settlements, judgments, back pay awards and front pay awards or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that an **Insured** is legally obligated to pay as a result of any **Claim**; provided, that **Loss** will not include (1) wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed; (2) severance pay or other amounts pursuant to an express contract of employment or an express obligation to make such payments in the event of termination of employment, including but not limited to payments for stock option or stock appreciation rights; or (3) the payment of any insurance plan benefits. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(K)  **Named Organization** means the entity designated as such in Item 1 of the Declarations [Eastwood Insurance Services, Inc.].

(N)  **Policy Period** means the period set forth in Item 2 of the Declarations [7/22/2005-7/22/2006] subject to the prior termination or cancellation pursuant to CONDITION (E).

(P)  **Retaliation** means retaliatory treatment against an **Employee** of the **Insured Organization** on account of such **Employee's** exercises or attempted exercise of his or her rights under law.

(Q)  **Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct or a sexual nature that is made a condition of employment with the **Insured Organization**, is used as a basis for employment decisions by the Insured **Organization**, creates a work environment with the **Insured Organization** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

    (3)  The term **"Third Party Sexual Harassment"** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made by an **Insured** to a **Third Party**.

(T)  **Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

-12-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    claimant's employment by the **Insured Organization**.

2    (U)  **Wrongful Act** means:

3    (1)  any **Employment Practices Wrongful Act** (a) by the
     **Insured Organization**, or (b) by an **Insured Person** in
4    his or her capacity as a director, officer, manager
     or **Employee** of the **Insured Organization**;
5

6    (2)  any other actual or alleged act, error, misstatement,
     misleading statement, omission or breach of duty (a) by
     the **Insured Organization**, or (b) by an **Insured Person**
7    in his or her capacity as a director, officer, member,
     manager or **Employee** of the **Insured Organization** or in
8    an **Outside Capacity**; or

9
     (3)  any matter claimed against an **Insured Person** by reason
10   of his or her service (a) as a director, officer, member,
     manager or Employee of the **Insured Organization**, or (b)
11   in an **Outside Capacity**.  (*Id.*)

12   **III.   USSIC IS OBLIGATED TO DEFEND EASTWOOD.**

13        **A.   Summary Judgment Standards.**

14        Summary judgment is proper if "there is no genuine issue as to any material

15   fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R.

16   Civ. P. 56(c).  The moving party bears the initial responsibility of demonstrating the

17   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

18   323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party must then

19   "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

20        "Partial summary judgment" is proper on all or part of a claim. Fed. R. Civ.

21   Pro. 56(a).  Case law also provides that the Court may grant partial summary

22   judgment on issues within claims, even if summary judgment on the entire claim is

23   not proper. *See Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441-42 (9th Cir. 1990)

24   (affirming summary adjudication of issues based on collateral estoppel).

25        The usual summary judgment standard is peculiarly inverted in the context of

26   an action seeking to establish an insurer's "duty to defend": where factual disputes

27   exist concerning whether a given claim falls within the terms of an insurance policy,

28   a potential for coverage of the claim and thus the insurer's "duty to defend" are

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                    -13-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  thereby <u>established</u> as a <u>matter of law</u>. *Montrose Chem. Corp. v. Superior Court*, 6
2  Cal.4th 287, 301 (1993); *Horace Mann Ins. Co.*, 4 Cal.4th at 1085 (holding that
3  where evidence does not eliminate possibility that insured's conduct falls within
4  policy of insurance, "the duty to defend is then *established*" [emphasis in original]).

5  **B.     <u>California Law Applies To This Action And USSIC's Policy.</u>**

6       When sitting pursuant to their "diversity" jurisdiction, federal courts "apply
7  state substantive law." *Continental Ins. Co. v. MGM*, 107 F.3d 1344, 1346 (9th Cir.
8  1997). This rule applies equally to insurance disputes, and requires that California
9  law be applied to the interpretation and enforcement of USSIC's policy. *Id.*

10  **C.     <u>Interpretation Of An Insurance Policy And The Existence Of A</u>**
11  **<u>Duty To Defend Are Questions Of Law For The Court.</u>**

12      The interpretation of an insurance policy is a question of law. *Waller v. Truck*
13  *Ins. Exchange, Inc.,* 11 Cal.4th 1, 18 (1995). The insurer's duty to defend is
14  likewise contractual in nature and is a question of law appropriate for summary
15  judgment. *Buss v. Superior Court*, 16 Cal.4th 35, 47 (1997); *Montrose*, 6 Cal.4th at
16  298-301. Even where policy language is <u>ambiguous</u> and may be read either to cover
17  <u>or</u> exclude a claim, the policy must "be construed in the insured's favor, according
18  to his reasonable expectations," establishing a potential for coverage and thus a duty
19  to defend. *Montrose*, 6 Cal.4th at 300.

20  **D.     <u>The Duty To Defend Is Broad And Requires A Defense Of Any</u>**
21  **<u>Claim Which Potentially Seeks Covered Damages.</u>**

22      An insurer has a broad duty to defend its insured. Indeed, an insurer "must
23  defend a suit which *potentially* seeks damages within the coverage of the policy."
24  *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966) (emphasis in original). A
25  defense is owed when the insurer has knowledge of facts from <u>any</u> source showing a
26  potential for coverage, even if not alleged in the complaint. *Montrose*, 6 Cal.4th at
27  298-99; *Gray*, 65 Cal.2d at 277.

28  / / /

1    In coverage disputes generally, the insured bears the burden of establishing
2    that a claim falls within the basic scope of coverage, and the insurer bears the
3    burden of proof concerning any policy exclusions. *Waller*, 11 Cal.4th at 16.  In
4    determining the existence of a duty to defend, the insured must first make only a
5    *prima facie* showing that a claim <u>potentially</u> falls within the insuring provisions of
6    the policy. *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188 (1998).  The
7    insured need show nothing "beyond a bare 'potential' or 'possibility' of coverage"
8    to establish the duty to defend. *Montrose*, 6 Cal.4th at 300.

9    In order to disprove the duty thereafter, the insurer must establish as a <u>matter</u>
10   <u>of law</u> that "the third party complaint <u>can by no conceivable theory</u> raise a <u>single</u>
11   <u>issue</u> which could bring it within the policy coverage'" in light of the policy's
12   limitations or exclusions. *Id.* at 300 (quoting *Gray*, 65 Cal.2d at 276 n.15)
13   (emphasis added).  "Any doubt as to whether the facts establish the existence of the
14   defense duty must be resolved in the insured's favor." *Id.* at 299-300.

15   Perhaps <u>most important</u> in this case, an insurer cannot avoid its duty to defend
16   based on a coverage defense that depends on facts in dispute in the underlying
17   lawsuit. *Mirpad, LLC v. Cal. Ins. Guar. Ass'n*, 132 Cal.App.4th 1058, 1068 (2005).
18   Indeed, "the very existence of that [factual] dispute would establish a possibility of
19   coverage and thus a duty to defend." *Id.* (emphasis in original); *Horace Mann Ins.*
20   *Co.*, 4 Cal.4th at 1085; *Montrose,* 6 Cal.4th at 300.

21   **E.    <u>Ms. Ayala's Claims For Damages Fall Within The Policy.</u>**

22   "To prevail" in establishing a duty to defend "the insured need only show that
23   the underlying claim *may* fall within policy coverage" while "the insurer must prove
24   it *cannot*." *Montrose*, 6 Cal.4th at 300 (emphasis in original).  Here, the allegations
25   of Ms. Ayala's Claims and the unambiguous terms of the Policy make clear that
26   Eastwood is entitled to a defense from USSIC.  USSIC impermissibly relies upon
27   <u>factual disputes</u> in the underlying litigation to deny Eastwood coverage.

28   ///

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                    -15-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    In her Second DFEH Complaint filed on September 2, 2005, Ms. Ayala

2 alleged that she "was denied family or medical leave" and that "Eastwood Insurance

3 and its management . . . wrongfully denied her requests for family and medical

4 leave." (Wahlquist Decl., Ex. 6.)  The Second DFEH Complaint was on its face a

5 "**Claim**" comprised of the "**Employment Practices Wrongful Act**" of "**Violation**

6 **of the Family and Medical Leave Act**." (*Id.*, Exs. 1, 2.)  What is more, the

7 "**Claim**" was by USSIC's own admission first made during the "**Policy Period**" of

8 July 22, 2005 through July 22, 2006. (*Id.*, Exs. 1, 2, 7.)

9    In her Third DFEH Complaint signed on July 11, 2006 and filed with the

10 DFEH on July 18, 2006, Ms. Ayala alleged that "on 10/2002 to 12/13/2005" Ms.

11 Ayala was "fired," "denied family or medical leave" and was the victim of

12 "discrimination" because of "Taking Medical Leave." (*Id.*, Ex. 6.)  Those

13 allegations arose out of events purportedly taking place on November 1, November

14 20, December 7, December 13 and December 26, 2005. (*Id.*)

15    On its face, this complaint constituted – like the Second DFEH Complaint – a

16 "**Claim**" for "**Wrongful Acts**" comprised of the "**Employment Practices**

17 **Wrongful Acts**" of "**Violations of the Family and Medical Leave Act**" and

18 "**Wrongful Termination**." (*Id.*, Exs. 1, 2.)  The Third DFEH Complaint was also

19 indisputably made during the "**Policy Period**."

20    It is equally indisputable that Ms. Ayala's July 11, 2006 service and filing of

21 a motion for leave to file a first amended complaint in the Arbitration was a

22 "**Claim**" for "**Wrongful Acts**" comprised of the "**Employment Practices**

23 **Wrongful Acts**" of "**Violation of the Family and Medical Leave Act**" and

24 "**Wrongful Termination**." (Hale-Johnson Decl., Ex. 10; Wahlquist Decl., Exs. 1,

25 2.) The new complaint was first made during the "**Policy Period**."

26    Ms. Ayala's complaint in the Riverside Litigation also constitutes a "**Claim**"

27 for "**Wrongful Acts**" comprised of the "**Employment Practices Wrongful Acts**"

28 of "**Violation of the Family and Medical Leave Act**" and "**Wrongful**

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                                     -16-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  **Termination**." (Payne Decl., Ex. 16; Wahlquist Decl., Exs. 1, 2.) These are the

2  same "**Claims**" made for those "**Wrongful Acts**" that were first made during the

3  "**Policy Period**" in Ms. Ayala's Second DFEH Complaint and Third DFEH

4  Complaint and in the Arbitration.

5      As a matter of substantive law, the allegations of these "Claims" are

6  "[sufficient] to raise the possibility that [Eastwood] would be liable for [damage]

7  covered by [USSIC's] policies." *Montrose*, 6 Cal.4th at 304.  USSIC has never

8  disputed that the Second DFEH Complaint, Third DFEH Complaint, proposed first

9  amended complaint in the Arbitration and the complaint in the Riverside Litigation

10  are "**Claims**" within the terms of the Policy.  (Wahlquist Decl., Exs. 1, 2.)  Indeed,

11  in order to contend that all of Mrs. Ayala's complaints and claims constituted a

12  single "**Claim**" under the Policy, thus eliminating coverage, USSIC effectively

13  admitted that that the Second DFEH Complaint, Third DFEH Complaint, and

14  proposed first amended complaint in the Arbitration are "**Claims**" as defined by the

15  Policy. (*Id.*)  At best, USSIC has raised <u>factual disputes</u>, none of which establish as

16  a matter of law – as USSIC must do – that the "**Claims**" can under no circumstances

17  give rise to damages covered by the Policy. *Mirpad*, 132 Cal.App.4th at 1068;

18  *Horace Mann Ins. Co.*, 4 Cal.4th at 1085; *Montrose,* 6 Cal.4th at 300.

19      **F.**   <u>**USSIC's Factual Disputes Do Not Negate A Duty To Defend.**</u>

20      As discussed above, in keeping with the broad reach of the duty to defend, an

21  insurer cannot avoid its duty to defend based on a coverage defense that depends on

22  facts in dispute in the underlying lawsuit. *Mirpad*, 132 Cal.App.4th at 1068; *Horace*

23  *Mann Ins. Co.*, 4 Cal.4th at 1085; *Montrose,* 6 Cal.4th at 300. Here, USSIC denied

24  Eastwood a defense of the Second DFEH Complaint, Third DFEH Complaint and

25  proposed first amended complaint in the Arbitration on two bases. First, USSIC

26  argued that Ms. Ayala's allegations in the Second DFEH Claim and the FMLA and

27  CFRA claims Ms. Ayala sought to add to the Arbitration were not "first made"

28  during the "**Policy Period**" because "Condition (C)" of the Policy "operates to

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

-17-

1  combine all the various Claims into a single Claim considered to have been first
2  made as of the filing of the First DFEH Complaint on August 4, 2004." (Wahlquist
3  Decl., Ex. 4.) USSIC's counsel argued that the Second DFEH Complaint, Third
4  DFEH Complaint and first amended complaint in the Arbitration all include
5  allegations of "retaliation," which purportedly were included in the First DFEH
6  Claim and the complaint in the LASC Litigation that pre-dated the "**Policy Period**."
7  (*Id.*) Thus, USSIC argued, "these additional allegations are part of the same Claim
8  that was made prior the inception of the Policy," eliminating coverage. (*Id.*)

9      However, the impetus for Ms. Ayala's "**Claims**," and the facts supporting her
10  "wrongful termination" and "retaliation" allegations in particular, is a <u>contested</u>
11  <u>issue of fact</u> in the Arbitration and litigation. Eastwood has denied and continues to
12  deny that Ms. Ayala's employment was terminated in violation of the FMLA or
13  CFRA, and Eastwood has denied and continues to deny that Eastwood "retaliated"
14  against Ms. Ayala or fired her for reporting her claims of "sexual harassment" in
15  violation of the FMLA or CFRA. (Payne Decl., ¶ 13; Hale-Johnson Decl., ¶ 12.)
16  Ms. Ayala obviously argues to the contrary. (*Id.*) This matter is now at issue in a
17  <u>pending appeal</u>. (Payne Decl., ¶ 13.)

18      Moreover, in seeking leave to amend her complaint in the Arbitration –
19  during the "**Policy Period**" – Ms. Ayala represented to Arbitrator Romero that
20  "[t]he First Amended Complaint adds <u>new allegations</u> that Eastwood fired Plaintiff
21  in retaliation for bringing her sexual harassment cause of action and that the firing
22  was unlawful under both the CFRA and the FMLA." (Hale-Johnson Decl., Ex. 10
23  [emphasis added].) "These causes of action," Ms. Ayala asserted, "<u>arose in</u>
24  <u>December of 2005</u>." (*Id.* at 4:13-16 [emphasis added].) At best, the date when the
25  "**Claims**" for "wrongful termination" and "retaliation" arose is a <u>factual</u> issue that
26  cannot negate the existence of coverage under the Policy as a <u>matter of law</u>, as
27  USSIC must do to avoid a duty to defend. *Mirpad*, 132 Cal.App.4th at 1068;
28  *Horace Mann Ins. Co.*, 4 Cal.4th at 1085; *Montrose*, 6 Cal.4th at 300.

Rutan & Tucker LLP
attorneys at law

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    Indeed, USSIC strained to identify <u>disputed factual matters</u> outside of the four

2 corners of the Policy in an attempt to support its denial of a defense to Eastwood. In

3 her letter denying coverage, USSIC's counsel wrote that "[i]t is also clear from

4 repeated references in the record that the medical condition that led Ayala to seek

5 FMLA leave (depression) arose from the alleged wrongful and retaliatory treatment

6 of Ayala that forms the basis for the prior complaints." (Wahlquist Decl., Ex. 4 at

7 3.) USSIC's effort in this regard fails.

8    In order for this extrinsic evidence to eliminate a duty to defend, USSIC must

9 establish that it is <u>undisputed</u>. *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins.*

10 *Co.*, 68 Cal.App.4th 1030, 1038 (1998) ("If the extrinsic evidence goes no farther

11 than 'maybe' and 'perhaps,' the insurer continues to have a duty to defend, because

12 the extrinsic evidence does not *conclusively* establish that the alleged damages

13 'cannot' fall within the scope of coverage."); *Montrose,* 6 Cal.4th at 298-99. USSIC

14 cannot possibly meet this burden: the issue of Ms. Ayala's claimed "medical

15 condition" and the impetus for her "FMLA leave" are squarely in dispute in the

16 Arbitration and pending appeal. (Payne Decl., Ex. 18.)

17    USSIC is also wrong on the law. In its letter denying coverage, USSIC cited

18 *Informix Corp. v. Lloyd's of London*, 1992 U.S. Dist. LEXIS 16836 (N.D. Cal., Oct.

19 15, 1992) ("*Informix*"), apparently in support of USSIC's contention that "additional

20 allegations raised in a pending proceeding" and "amendments to [an] initial

21 proceeding" do not "constitute a distinct Claim under the Policy." (Wahlquist Decl.,

22 Ex. 4.) However, *Informix* addressed an insured's contention that a complaint filed

23 during the pendency of one policy was covered under a subsequent policy because

24 the complaint was amended during the pendency of the second policy to add a new

25 insured defendant. *Id.* at *3. The *Informix* court found that the amendment of the

26 complaint was not a new "claim" pursuant to the definition of that term in the

27 second policy, *i.e.*, in relevant part, a "judicial or administrative proceeding . . . ."

28 *Id.* at *5.

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

-19-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    In addition, the *Informix* court considered the second policy's definition of the
2  term "interrelated wrongful acts" as "Wrongful Acts which have as a common nexus
3  any fact, circumstance, situation, event, transaction or series of facts, circumstances,
4  situations, events or transactions." *Id.* at *6.  The second policy also provided that
5  "[m]ore than one claim involving the same Wrongful Act or Interrelated Wrongful
6  Acts of one or more Directors and Officers shall be deemed to constitute a single
7  claim and each single Claim shall be deemed to have been made solely within the
8  earliest of the following Policy years: (1) the Policy year in which the earliest claim
9  involving the same Wrongful Act or Interrelated Wrongful Acts is made . . . ." *Id.*
10 The District Court found that even if the amended complaint stated a new claim, the
11 new claim was based on "interrelated wrongful acts" with the original claims. *Id.*

12    Here, USSIC's Policy defines the term "**Claim**" as, *inter alia*, "(1) any oral or
13 written demand, including any demand for non-monetary relief,  (2) any civil
14 proceeding commenced by service of a complaint or similar pleading," or "(3) any
15 arbitration, mediation or other similar dispute resolution proceeding."  (Wahlquist
16 Decl., Exs. 1, 2.)  This definition of "**Claim**" is not limited to a "judicial or
17 administrative proceeding" as was the definition in the policy at issue in *Informix*.
18 1992 U.S. Dist. LEXIS 16836 at *7.  Moreover, USSIC's Policy does not define the
19 term "related acts," while the policy at issue in *Informix* did provide a definition of
20 the term "Interrelated Wrongful Acts" sufficient to establish as a matter of law that
21 the amended complaint against Informix had as a "common nexus . . . any fact,
22 circumstance, situation, event, transaction or series of facts, circumstances,
23 situations, events or transactions." *Id.* at *7 (emphasis added).  At most here, the
24 issue of whether any "**Claims**" are interrelated is a factual issue that would not
25 negate a duty to defend. *Mirpad*, 132 Cal.App.4th at 1068; *Horace Mann Ins. Co.*, 4
26 Cal.4th at 1085; *Montrose,* 6 Cal.4th at 300.

27    In addition, USSIC's policy refers to "**Claims**" – not "acts" – "alleging,
28 arising out of, based upon or attributable to the same facts, circumstances, situations,

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                        -20-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   transactions or events" or "series of <u>related</u> facts, circumstances, situations,

2   transactions or events," in contrast with the much broader "common nexus"

3   definition in *Informix*. (Wahlquist, Exs. 1, 2 [emphasis added].) The "wrongful

4   termination" and "retaliation" claims based upon the FMLA and CFRA first raised

5   in Ms. Ayala's Second DFEH Complaint, Third DFEH Complaint and first amended

6   complaint in the Arbitration do not allege or arise out of nor are they based upon or

7   attributable to the "<u>same</u> facts, circumstances, situations, transactions or events" as

8   Ms. Ayala's First DFEH Claim and the complaint in the LASC Litigation. Ms.

9   Ayala herself argued that the "wrongful termination" and "retaliation" claims first

10  "<u>arose in December of 2005</u>," because Ms. Ayala was <u>still employed by Eastwood</u>

11  until that point. (Hale-Johnson Decl., Ex. 10 at 4:13-16 [emphasis added].)

12  Moreover, those claims cannot allege or arise out of nor be based upon or

13  attributable to the same "series of <u>related</u> facts, circumstances, situations,

14  transactions or events" if the "facts, circumstances, situations, transactions or

15  events" are not <u>related</u>. (*Id.* [emphasis added].) At best for USSIC this is a <u>factual</u>

16  issue in the Arbitration, and Eastwood has disputed and continues to dispute any

17  such relationship between Ms. Ayala's "**Claims**." (Payne Decl., ¶ 13.)

18         USSIC also misapplies Condition (C) of the Policy. Clauses such as

19  Condition (C) are generally applied in the context of disputes between insured and

20  insurer regarding policy limits and deductibles, not, as USSIC seeks to do in this

21  case, to exclude coverage altogether under a single policy where a purported "first"

22  claim was made prior to the inception of the policy. Indeed, California case law

23  supports the principle that clauses such as Condition (C) are not "exclusions," but

24  rather relate to deductibles and policy limits. *Homestead Insurance Co. v. American*

25  *Empire Surplus Lines Ins. Co.*, 44 Cal.App.4th 1297 (1996).

26         This interpretation of the Policy comports with the case law regarding "prior

27  litigation" or "prior claim" exclusions, including the *Informix* case upon which

28  USSIC relies. These cases do <u>not</u> hold that the amended complaint is "related" to

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                                      -21-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  the original complaint, thus eliminating coverage, but rather that the amended

2  complaint is not a "claim" under the policy language in the first instance. *Informix.*

3  1992 U.S. Dist. LEXIS 16836 at *7.

4      Here, however, USSIC has already acknowledged that Ms. Ayala's Second

5  DFEH Complaint, Third DFEH Complaint, and first amended complaint in the

6  Arbitration are "**Claims**," as discussed above.  Moreover, USSIC's Policy defines

7  "**Claim**" as <u>both</u> "<u>any</u> oral or written demand" <u>or</u> "any civil proceeding commenced

8  by service of a complaint or similar pleading."  (Wahlquist Decl., Exs. 1, 2.)  Thus,

9  case law regarding "amended" complaints would not apply, because the term

10  "**Claim**" is not limited to the "commencement" of a civil "proceeding." (*Id.*)  The

11  "**Claims**" made by Ms. Ayala before and after inception of the Policy are also not

12  "related" because the later "**Claims**" – including Ms. Ayala's Second DFEH

13  Complaint, Third DFEH Complaint, and first amended complaint in the Arbitration

14  – make allegations of facts that did not exist or occur before <u>December 2005</u>.

15      For the same reasons, USSIC's reliance upon the "pending or prior litigation"

16  exclusion in the Policy – Exclusion (I) is misplaced.  (Wahlquist Decl., Ex. 4 at 6-7.)

17  Under any reasonable interpretation of the Policy, facts which <u>did not exist</u> at the

18  time "pending or prior litigation" was filed and upon which later "**Claims**" are made

19  cannot constitute "the same or essentially the same facts or circumstances as

20  alleged" in the pending or prior litigation.  (*Id.*)

21      **G.    Eastwood's Truthful Responses To The Application For USSIC's**

22          **Policy Cannot Eliminate A Duty To Defend.**

23      USSIC relies upon Question 12 of the Application for the Policy to deny

24  coverage, contending that because Eastwood disclosed Ms. Ayala's pre-Policy

25  "**Claims**" in response to one question – Question 13(e) – rather than another

26  question – Questions 12(a) or 12(b) – Eastwood is not entitled to coverage for Ms.

27  Ayala's later-filed "**Claims**."  (Wahlquist Decl., Ex. 4 at 7.)  Question 12 of the

28  Application provided as follows:

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08                          -22-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  
2  
3  
4  

> Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim, arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

5  (*Id.*, Ex. 3.) As USSIC's counsel explained, "because the more recent Ayala

6  allegations arise out of, are based upon or attributable to *any* of the facts,

7  circumstances or situations contained in [Ms. Ayala's] earlier filings, coverage is

8  unavailable" pursuant to Question 12. (*Id.*, Ex. 4 [emphasis in original].)  However,

9  USSIC's counsel acknowledged that Eastwood had "disclosed elsewhere in the

10  Application the filing of a complaint by Ayala in December 2003." (*Id.*)

11      Eastwood disclosed all relevant information to USSIC in its Application for

12  the Policy.  Eastwood did not further identify any aspect of the LASC Litigation or

13  the Arbitration between Ms. Ayala and Eastwood in response to the Application's

14  Questions 12(a) and 12(b), rather than Question 13(e), because information

15  regarding those matters was not responsive to those questions.  (Wahlquist Decl.,

16  Ex. 3.)  Mr. Chavez was not a "director, officer or trustee" of Eastwood in the first

17  instance, thus rendering Question 12(a) irrelevant in that regard.  Having terminated

18  Mr. Chavez's employment, Eastwood had no reason to believe that the matters

19  which were the subject of the LASC Litigation and the Arbitration might result in

20  new or additional claims being made in the future, thus eliminating Question 12(b).

21  In addition, having identified and disclosed the LASC Litigation and the Arbitration

22  in response to Question 13(e) with no later inquiry from USSIC (Amended Answer,

23  ¶ 14), Eastwood reasonably understood that it had no further obligation to make

24  disclosures to USSIC regarding those matters.

25      The purported exclusion set forth at Question 12 in the Application is also

26  unenforceable as a matter of law.  The general rule in California is that "insurance

27  provisions that take away or limit coverage must be conspicuous, plain, and clear."

28  *Travelers Casualty & Surety Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949,

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

-23-

1  958 (2004).  Here, the Application purports to exclude coverage for any claim
2  ostensibly required to be disclosed in response to one question in the Application.
3  (Wahlquist Decl., Ex. 3.)  The Policy incorporates the Application by reference.
4  However, <u>nothing in the Policy form itself excludes coverage for any "**Claim**"</u>
5  <u>required to be disclosed in the Application</u>.  (*Id.*, Exs. 1, 2.)

6       Whether a policy exclusion is conspicuous is a question of law.  *Jauregui v.*
7  *Mid-Century Ins. Co.*, 1 Cal.App.4th 1544, 1548 (1991).  California courts have not
8  specifically addressed whether an exclusionary clause contained only in an
9  application for an insurance policy can be "conspicuous."

10      Generally, however, an exclusion must be conspicuous in its location <u>within</u>
11  <u>the policy</u>, in its print size, and in relation to the density of the entire contract.
12  Croskey, et al., CAL. PRAC. GUIDE: CAL. INS. LIT., § 4:495; *Ponder v. Blue Cross of*
13  *S. Cal.*, 145 Cal.App.3d 709, 723 (1983).   "[A]n exclusion is subjected to the
14  closest possible scrutiny."  *Ponder*, 145 Cal.App.3d at 718.  Case law indicates that
15  a purported "exclusion" not labeled as such or contained in the policy is not
16  "conspicuous."

17      For example, a provision in an automobile policy limiting coverage for
18  permissive users was held not to be conspicuous where it appeared on the tenth page
19  of the policy with no obvious indication of an "exclusion," the "declarations" page
20  of the policy showed higher limits and endorsements were listed only by number.
21  *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1206 (2004).  Here, the purported
22  "exclusion" set forth at Question 12 of the Application appears <u>nowhere</u> in the
23  Policy, the Policy contains a completely different set of "Exclusions" and none of
24  the "Endorsements" even mentions Question 12.  (Wahlquist Decl., Ex. 1.)

25      What is more, even "clear and conspicuous" exclusions that purport to forfeit
26  coverage on technical grounds bearing no substantial relationship to the insurer's
27  risk are disfavored.  *University of Judaism v. Transamerica Ins. Co.*, 61 Cal.App.3d
28  937, 942 (1976); *California Comp. & Fire Co. v. Industrial Acc. Comm'n*, 62 Cal.2d

Rutan & Tucker LLP
attorneys at law

2152/015922-0029
931413.04 a09/02/08

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

-24-

1  532, 535 (1965). Here, USSIC <u>admits</u> that Eastwood disclosed the initial Claims
2  made by Ms. Ayala. (Wahlquist Decl., Ex. 4 at 6-7.) USSIC <u>has not argued</u> that it
3  was in any way prejudiced by Eastwood providing information in response to
4  Question 13(e) of the Application rather than Questions 12(a) or 12(b), or that
5  USSIC's risk was in any way increased. (*Id.*) This is an entirely technical defense
6  bearing absolutely no relationship to USSIC's risk, and does not preclude coverage.

7  **IV.    CONCLUSION.**

8       Eastwood respectfully requests that this Court enter partial summary
9  judgment for Eastwood, finding that USSIC has a duty to defend Eastwood against
10 Ms. Ayala's Second DFEH Complaint, Third DFEH Complaint, first amended
11 complaint in the Arbitration and the Riverside Litigation. Alternatively, Eastwood
12 respectfully requests an order requiring USSIC to reimburse Eastwood for its fees
13 and costs incurred in defending itself.

14

15 DATED: September 2, 2008         RUTAN & TUCKER LLP

16

17                                 By: _____
18                                      Gerard M. Mooney, Esq.
                                    Attorneys for Plaintiff EASTWOOD
19                                  INSURANCE SERVICES, INC.

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT